# FOR PUBLICATION



**FILED & ENTERED**

**JUL 23 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY romero    DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>GWENDOLYN WASHINGTON | Case No.: 6:17-bk-15102-MH<br><br>Chapter: 13<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISALLOW CLAIM** |

I.    **BACKGROUND**

On June 19, 2017, Gwendolyn Washington ("Debtor") filed a Chapter 13 voluntary petition. Previously, on August 1, 2012, Debtor obtained a discharge in a Chapter 7 proceeding. On July 10, 2017, Debtor filed a motion to avoid lien with "Option One Mortgage Corp serviced by Real Time Resolutions Inc." This lien predated the petition date of Debtor's Chapter 7 case. On August 8, 2017, the Court entered an order granting the motion. Section 4b(4) of the form order states: "The claim of the junior lienholder is to be treated as an unsecured claim and is to be paid through the plan pro rata with all other unsecured claims." Section 4b(5) of the form order states:

> The junior lienholder's claim on the deed of trust, mortgage or lien shall be allowed as a non-priority general unsecured claim in the amount per the filed Proof of Claim. The junior lienholder is not required to, but may file an amended Proof of Claim listing its claim as an unsecured claim to be paid in accordance it the Debtor's chapter 13 plan. If an amended claim is not filed, the trustee may treat any claim on the debt (secured or unsecured) filed by the junior lienholder as unsecured upon entry of this order.

On August 17, 2017, Debtor's Chapter 13 case was confirmed. On August 29, 2017, Real Time Resolutions, Inc. ("Creditor") filed a secured claim in the amount of $307,049.79, including arrears in the amount of $177,235.84 ("Claim 5"). On December 15, 2017, Debtor filed an objection to Claim 5. The basis for Debtor's objection is that her personal liability on Claim 5 was discharged in a previous bankruptcy case, and the Court's order avoiding the lien of Creditor means that the claim is no longer secured. On January 24, 2018, Creditor modified Claim 5, identifying the entirety of Claim 5 as unsecured.

## II. APPLICABLE LAW:

*A. Claim Objection*

Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects. Absent an objection, a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy Procedure ("FRBP") 3001(f). *See Lundell v. Anchor Constr. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000). When a party files an objection to a proof of claim, that filing "creates a dispute which is a contested matter" within the meaning of FRBP 9014 and the Court must resolve the matter after notice and opportunity for hearing upon a motion for relief. *Id.*

When a creditor has filed a proof of claim that complies with the rules (thereby giving rise to the presumption of validity), the burden shifts to the objecting party who must "present evidence to overcome the *prima facie* case." *In re Medina*, 205 B.R. 216, 222 (9th Cir. B.A.P. 1996). To defeat the claim, the objecting party must provide sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (*quoting In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). "The objector must produce evidence, which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Lundell*, 223 F.3d at 1040 (*quoting In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). If the objecting party produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re Consol. Pioneer Mort*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91

F.3d 151 (9th Cir. 1996) (*quoting Allegheny Int'l*, 954 F.2d at 173-74). The ultimate burden of persuasion remains at all times on the claimant. *See Lundell*, 223 F.3d at 1039; *see also Holm*, 931 F.2d at 623.

### B. Summary of Analysis

The avoidance of a consensual lien in a Chapter 13 case is effectuated by a two-step process. First, the Court engages in a § 506(a) valuation, bifurcating the claim into secured and unsecured portions. Then the Court applies § 1322(b)(2). If the § 506(a) valuation results in a "secured claim[s], other than a claim secured only by a security interest in real property that is the debtor's principal residence" or an unsecured claim, then the plan may modify the rights of the creditor under § 1322(b)(2), avoiding the lien. This is the result because the Supreme Court has concluded that after a § 506(a) valuation, a wholly underwater junior lien is to be treated as an unsecured claim, and unsecured claims are subject to modification under § 1322(b)(2).

If the debtor's personal liability on the underlying debt has been discharged in a previous bankruptcy case, however, the issue is more complex. Because there is no *in personam* liability on the underlying debt, it could be argued that there is no unsecured claim after the § 506(a) valuation. If there is no unsecured claim, however, the debtor would be ineligible to use § 1322(b)(2) to avoid the lien. Therefore, lien avoidance is only statutorily permissible if § 506(a) is interpreted as "creating" an unsecured claim for the purposes of the Chapter 13 bankruptcy. As outlined below, this result is logically necessary, and case law, this district's mandatory forms, and policy considerations all weigh in favor of the result.

### III. ANALYSIS:

The sole basis for Debtor's objection to Claim 5 is that Claim 5 was the subject of (1) a prior discharge and (2) a lien avoidance order. To understand the legal argument made, a brief history of lien avoidance is necessary.[1]

Prior to 1992, lien avoidance was available to debtors in both Chapter 7 and 13 proceedings, and for junior liens that were both wholly underwater and partially underwater. *See e.g.*, *Gaglia v. First Fed. Savs. & Loan Ass'n*, 889 F.2d 1304 (3rd Cir. 1989) (Chapter 7 debtors could strip down partially underwater junior lien). In 1992, however, the Supreme Court decided *Dewsnup v. Timm*, 502 U.S. 410 (1992), which held Chapter 7 debtors could not strip down a partially unsecured lien to the value of the collateral. In reaching conclusion, the Supreme Court noted the definition of secured claim in 11 U.S.C. § 506(a)(1), which states as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the

---

[1] For an extensive review of the history of lien avoidance and discussion of current issues arising in the context of "Chapter 20" filings see *Jessica Johns*, *Lien Stripping in Chapter 20 Bankruptcy: A Permissible Relief to Debtors*, 32 EMORY BANKR. DEV. J. 471 (2016).

   purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The Supreme Court also noted the language of 11 U.S.C. § 506(d), which states, in relevant part: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." Prior to *Dewsnup*, courts have interpreted § 506(a)(1) and § 506(d), when read in conjunction, to establish a method by which debtors could void a lien to the extent such a lien was wholly or partially unsecured. The Supreme Court, however, rejected that reading, deferring to the "pre-Code rule that liens pass through bankruptcy unaffected." *Id*. at 778. In rejecting such a reading, the Supreme Court foreclosed the possibility of using § 506 as an independent mechanism to avoid wholly or partially underwater liens. Nevertheless, the Eleventh Circuit continued to allow Chapter 7 debtors to strip off wholly underwater liens, noting that the Supreme Court in *Dewsnup* had decided on the facts of a partially underwater lien. *See, e.g.*, *In re McNeal*, 735 F.3d 1263 (11th Cir. 2012).

In 2015, however, the Supreme Court returned to the issue, and rejected the Eleventh Circuit's approach, holding that Chapter 7 debtors could not avoid wholly underwater liens through the operation of § 506. While it is not exactly clear how § 506 could be applied differently depending on whether the lien is wholly or partially unsecured, the Supreme Court concisely reasserted that "*Dewsnup* defined the term 'secured claim' in § 506(d) to mean a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim. . . . *Dewsnup*'s construction of 'secured claim' resolves the question presented here."

Nevertheless, Chapter 13 debtors have a different mechanism by which they can avoid liens which are partially or wholly underwater: 11 U.S.C. § 1322(b)(2), which states:

> (b) Subject to subsections (a) and (c) of this section, the plan may –
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims

Prior to 1993, bankruptcy courts had allowed Chapter 13 debtors to use the above provision to avoid both wholly and partially underwater liens. In 1993, however, the Supreme Court decided *Nobelman v. Am. Savs. Bank*, 508 U.S. 324 (1993), which limited Chapter 13 debtors' ability to use § 1322(b)(2) to avoid liens to only those circumstances where the junior lien was wholly underwater. *Id*. at 332 ("In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitions proposed would require a modification of the rights of the holder of the security interest. Section 1322 (b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence."). After *Nobelman*, Chapter 13 debtors were still permitted to use § 1322(b)(2) to avoid liens which were "secured" by their principal residence, if such lien was wholly underwater (and thus, pursuant to § 506(a)(1), not "secured"). *See, e.g.*, *In re Tanner*, 217 F.3d 1357, 1359-60 (11th Cir. 2000).

An additional wrinkle, however, is present when a debtor files a "Chapter 20" case.[2] A Chapter 20 case involves a debtor who received a discharge in a Chapter 7 case and subsequently (technically within four years) files a Chapter 13 case. In that circumstance:

> The Chapter 7 discharge erases all dischargeable, unsecured debts. The discharge, however, only prevents creditors from collecting against the debtors personally. Any liens on secured property ride through the bankruptcy. The liens become non-recourse loans. When the debtor then files under Chapter 13 none of the unsecured debt is part of the Chapter 13 case because it has been discharged in the Chapter 7 case, but the remaining liens are claims in the Chapter 13.

*In re Winitzky*, 2009 WL 9139891 at *1 (Bankr. C.D. Cal. 2009) (citations omitted). There are at least two significant questions that arise when a Chapter 13 debtor attempts to avoid a wholly underwater junior lien after obtaining a Chapter 7 discharge: (1) whether avoidance of the junior lien is permissible and (2) how the holder of the junior lien should be treated during the pendency of the Chapter 13 plan. Furthermore, there is an additional important question here: how much weight should the Court give the language of the lien avoidance motion and the subsequent order granting the motion.

The two preliminary questions identified above are legally complex – although a brief description is adequate to reveal the issues. Under the *Nobelman* lien avoidance procedure, a debtor first seeks a valuation under § 506(a)(1). Pursuant to § 506(a)(1), the claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property," and is

---

[2] Note: The instant case is not a "true" Chapter 20 case because Debtor received her Chapter 7 discharge on August 1, 2012, The same issues, however, are either directly or indirectly relevant here.

an "unsecured claim to the extent that the value of such creditor's interest or the amount so subject setoff is less than the amount of such allowed claim."

Here, because the entire claim is underwater, the application of § 506(a)(1) leads to a conclusion that the amount of the secured claim is zero. Pursuant to § 506(a)(1), the remainder of the claim is unsecured. The issue, however, is whether § 506(a)(1) presupposes that *in personam* liability exists on the claim in the first place. If § 506(a)(1) does not implicitly contain such a presumption, then the plain language of the statute reads that any part of the claim determined not to be secured is automatically unsecured. In effect, a Chapter 20 debtor would have a choice regarding wholly underwater junior liens: treat the claim as either wholly secured or wholly unsecured.

If § 506(a)(1) does implicitly contain an assumption that, for an unsecured claim to remain, *in personam* liability must have existed on the claim in the first place, a different problem arises. As noted above, section 1322(b)(2) allows Chapter 13 debtors to "modify the rights of holders of secured claims, other than a claim secured only by a secured interest in real property that is the debtor's principal residence, or of holders of unsecured claims." And *Nobleman* requires a two-step, sequential process for lien avoidance of wholly underwater junior liens by Chapter 13 debtors: (1) the application of § 506(a)(1), then (2) the operation of § 1322(b)(2). In order for § 1322(b)(2) to be applicable, however, and thus lien avoidance possible, the § 506(a)(1) valuation must reach one of two results: (1) a secured claim, other than a claim secured by real property that is the debtor's principal residence; or (2) an unsecured claim. Clearly, if Claim 5 is secured, it is only secured by Debtor's principal residence. Therefore, the only way § 1322(b)(2) can be applied is if the operation of § 506(a)(1) results in an unsecured claim. The result is logically unambiguous, and simply unavoidable.

The Court's form motion and order, as well as case law, implicitly and explicitly recognize this dilemma for debtors. The lien avoidance motion filed by Debtor included the following request: "Respondent's claim on the junior position lien shall be allowed as a nonpriority general unsecured claim in the amount per the filed Proof of Claim." [Dkt. No. 21 at 3(d)(3)]. And, as noted in the introduction section, the Court's order granting the motion contains the following: "The claim of the junior lienholder is to be treated as an unsecured claim and is to be paid through the plan pro rata with all other unsecured claims." [Dkt. No. 30 at 4(b)(4)].[3]

The case law on this narrow issue (if lien stripping is allowed in a Chapter 20, how should the claim be treated during the plan) is not extensive. Multiple bankruptcy courts in California, however, have recognized the consequences noted above. The first opinion nationally to address the issue appears to have come from this district. *See In re Akram*, 239 B.R. 371, 377 (Bankr. C.D. Cal. 2001) ("However, neither *Lam* nor the cases from other Circuits addressed or allowed

---

[3] A response could be made that the language of the form motion and order is simply general language, not specific enough to address a Chapter 20 case. The response is inaccurate because the order contains language that specifically addresses Chapter 20 cases. There is a split of authority nationally regarding whether lien stripping is ever permissible in "true" Chapter 20 cases where a debtor is ineligible for a discharge. *See generally In re Boukatch*, 533 B.R. 292 (B.A.P. 9th Cir. 2015) (providing a detailed review of the different approaches). Courts that conclude that lien avoidance is impermissible in a Chapter 20 case have reasoned one of two ways: (1) 11 U.S.C. § 1325(a)(5)(B) prevents a lien from being avoided without payment of the underlying claim or discharge; and (2) a case can only end in one of three ways: (a) discharge; (b) conversion; or (c) dismissal. Courts that allow lien avoidance in Chapter 20 cases have recognized a fourth way for a Chapter 13 case to end: closure without discharge. This "court-invented" fourth option was devised specifically in response to bankruptcy courts that held discharge was an absolute requirement for lien avoidance by operation of §§ 348 and 349. *See In re Okosis*, 451 B.R. 90 (Bankr. D. Nev. 2011) (a detailed discussion of the "fourth-option"). And the Central District of California's form motion and order specifically acknowledge the fourth option, only used in Chapter 20 cases, in the choice of the effective time of avoidance.

the result moved for here: that a *Lam*-stripped claim should be valued, for chapter 13 plan purposes, not only as a secured claim of zero, but also as a general unsecured claim of zero, where the debtor previously received a chapter 7 discharge. In fact, neither movant, nor this Court, found any reported case authorizing the result here moved for, or even ruling on this 'Chapter 20' twist to *Lam* motions."). The holding of that case was: "the '*Lam*-stripping" of these secured claims in the chapter 13 case resulted in valuing the secured claims at zero secured, for chapter 13 plan purposes, and turned the full amount owed to each creditor (pursuant to that creditor's Note) into a general unsecured claim, for chapter 13 plan purposes." *Id*. at 378.

The reasoning of *Akram* does not appear to be universally accepted, however, it has been cited approvingly by the BAP and is the majority position on the issue. *See In re Eaton*, 2006 WL 6810924 at *6 (B.A.P. 9th Cir. 2006); *In re Gounder*, 266 B.R. 879, 880 (Bankr. E.D. Cal. 2001) ("Given that the lien survived the chapter 7 discharge, if a chapter 13 petition is later filed and the lien is stripped pursuant to *Lam*, the creditor must be allowed an unsecured claim despite the earlier chapter 7 discharge."); *see also In re Renz*, 476 B.R. 382, 392 (Bankr. E.D.N.Y. 2012). Even *Okosis*, the decision commonly referred to as detailing the "fourth option" which provided a rationale to validate lien stripping in Chapter 20 cases (see footnote 4), concluded that the claim must be treated as an unsecured claim in the plan. 451 B.R. 90, 96 (Bankr. D. Nev. 2011) ("Even though the chapter 13 debtor faces no personal liability on the debt, the debtor may use Section 506(a) to determine that the claim is not supported by the value of any collateral, avoid the lien through the chapter 13 plan, and thereby treat the debt as unsecured debt.").

Ultimately, the case law and this district's form motion and order recognize the logical necessity that only one of two things can be true: (1) lien stripping is unavailable in Chapter 20 cases; or (2) the wholly underwater junior lien becomes an unsecured claim upon lien avoidance. Quite simply, the Chapter 20 debtor cannot have its cake and eat it too. Creditor's claim, originally

secured by property of the estate, is converted to an unsecured claim against the estate after lien avoidance.

Not only do logical reasoning, case law, and this district's practice demand the result, but the equities concur. A Chapter 13 debtor can propose plans which pay creditors three different categories of dividends: (1) 0%; (2) more than 0%, but less than 100%; or (3) 100%. In either of the first two cases, treatment of the claim as an unsecured claim would not affect the amount the debtor pays into the plan. Only in the situation where the debtor is not paying the entirety of its disposable income into the plan does the situation affect the debtor. In other words, only in those cases where the Chapter 13 debtor has the ability to pay some or the entire resulting unsecured claim would the result impact the Chapter 13 plan.[4] Furthermore, there is no (other) mechanism under the bankruptcy code that would allow a debtor to avoid a lien and discharge the *in personam* liability without the obligation to make a good faith effort to make payment on the claim. For all the reasons outlined above, Debtor's efforts at finding a loophole to avoid the requirement are logically incompatible with the Code.

### IV.    CONCLUSION

Based on the foregoing, the motion to disallow claim is DISALLOWED. IT IS SO ORDERED.

###

Date: July 23, 2018

Mark Houle
United States Bankruptcy Judge

---

[4] In this case, Debtor has more than $4,000 in disposable